IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NAOMI S. BARNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No.   CIV-04-1252-F |
| JO ANNE B. BARNHART, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

# FINDINGS & RECOMMENDATION
# OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B), and for the reasons stated herein, it is recommended that the Commissioner's decision be **AFFIRMED** .

**PROCEDURAL HISTORY**

Plaintiff filed her application for DIB on March 11, 2002 alleging a disability since October 1, 1998 (TR. 53-55). The application was denied on initial consideration and on reconsideration at the administrative level (TR. 29, 30). Pursuant to the Plaintiff's request, a hearing de novo was held before an administrative law judge (ALJ) on October 7, 2003 (TR. 264-301). The Plaintiff appeared in person and with her attorney and offered her testimony in support of the application (TR. 268-293, 297-298). A vocational expert (VE) also testified at the request of the ALJ (TR. 293-296). The ALJ issued his decision on January 29, 2004 finding that Plaintiff was not entitled to DIB (TR. 15-24). The Appeals Council denied the Plaintiff's request for review on September 4, 2004, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 3-6).

**STANDARD OF REVIEW**

The Tenth Circuit case of Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (citations omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (citations omitted). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (citations omitted). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (citations omitted). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (citations omitted).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992) (citations omitted).

**DISCUSSION & FINDINGS**

In addressing the Plaintiff's disability application the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, so the process continued (TR. 23). At step two, the ALJ concluded that Plaintiff had the following impairments which singly or in combination were severe:

> history of fibromyalgia; connective tissue disease with dry mouth, dry nose, rash, arthritis and in large [sic] carotid glands suggesting primary Sjogren's; degenerative joint disease vs. osteoarthritis of the cervical spine, knee and hands; peripheral neuropathy probably associated with Sjogrens'; and GERD.

(TR. 23). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 23). At step four, the ALJ found that Plaintiff retained the residual functional

capacity (RFC) to perform her past relevant work (PRW) (TR. 24). Thus, at step four of the sequential analysis the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB (TR. 24).

On appeal to this Court, Plaintiff alleges that the ALJ erred in rejecting the opinions of her treating physician; and further erred in determining that she could return to her PRW.

In December 1998 Plaintiff was examined by Stanley O. Skarli, M.D. (neurosurgeon), who found that Plaintiff's range of motion in her neck was mildly restricted in all fields secondary to pain; that no radicular or medial parascapular pain was produced; and that her shoulders had good movement bilaterally without development of pain (TR. 110). Dr. Skarli also noted that Plaintiff's mental status was normal; that she had normal motor strength and tone; and that her heel and toe walking and her tandem gait were performed normally (TR. 110).

Also in December 1998, Kirit C. Shah, M.D. (neurologist) performed an EMG-NCV study which he found to be "mildly abnormal" and based on the study he suspected mild diffused polyneuropathy (TR. 112).

In January 1999 Plaintiff was examined by Phillip J. Wright, M.D. (rheumatologist), who found that Plaintiff had no chronic swelling of the metacarpal phalangeal joints, the wrist, or any of her peripheral joints; that she had no obvious weakness in any of her muscle groups; and that she had no significant loss of sensation to pinprick or light touch (TR. 118). Dr. Wright noted that Plaintiff's reaction to the pinprick assessment was hyperkinetic which tended to suggest a very low pain threshold (TR. 118).

In January 2002 Plaintiff was examined by Craig W. Carson, M.D. (rheumatologist), who found that Plaintiff "gets up with some difficulty and has a stiff gait"; that her shoulder, elbow and hip ranges of motion were normal; and that her left wrist was swollen and tender with limited range of motion (TR. 221). Dr. Carson's impression was of fibromyalgia; connective tissue disease

with dry mouth, dry nose, rash, arthritis and enlarged carotid glands suggesting primary Sjogren's; osteoarthritis of the cervical spine, knee and hands; peripheral neuropathy probably associated with Sjogrens'; and GERD (TR. 222).

A Physical RFC Assessment completed in June 2002 by an agency physician concluded that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; climb, balance, stoop, kneel, crouch, and crawl only occasionally; and sit, stand and/or walk for a total of about six hours in an eight hour workday (TR. 235-236). The agency physician further concluded that Plaintiff had no other exertional, postural, manipulative, visual, communicative, or environmental limitations (TR. 235-237).

On September 10, 2003 an RFC questionnaire was completed by Jama Shoemaker, P.A.-C, who concluded that Plaintiff had depression "some @ times"; that Plaintiff's pain and other symptoms were severe enough to "constantly" interfere with her attention and concentration needed to perform simple work tasks; and that Plaintiff was incapable of even "low-stress" jobs (TR. 243). Shoemaker also concluded that Plaintiff could never lift and carry ten pounds in a competitive work situation; and that Plaintiff would likely be absent from work more than four days per month (TR. 245). Dr. Carter later signed the form prepared by Shoemaker (TR. 254).

In an October 8, 2003 letter completed the day after the hearing before the ALJ, Dr. Carson stated that as of his September 10, 2002 examination of Plaintiff, she had painful, swollen joints which were tender and had limited motion (TR. 255). Dr. Carson further stated that Plaintiff had limitations imposed by her rheumatoid arthritis which included sitting for twenty minutes and standing or walking for ten minutes; and only two hours of sitting, standing or walking in an eight hour period (TR. 255). Dr. Carson opined that Plaintiff's standing and walking and sitting were limited by joint pain and stiffness and required that she be allowed to get up and move every fifteen minutes and on occasion lie down to rest (TR. 255). Dr. Carson further advised that

Plaintiff would need a rest break approximately every hour for at least five minutes; that she would not be able to do any lifting over ten pounds; and that she could do no twisting, stooping, crouching, bending or climbing (TR. 255). He also stated that Plaintiff had lost sensation in her hands and did not have the strength or the mobility of the joints for grasping, twisting, fine manipulation or reaching (TR. 255). Dr. Carson concluded that it was his "hope that the judge will find this information adequate to conclude as we have that she can perform no work of any kind" (TR. 256).

Plaintiff urges that the ALJ erred in disregarding the opinions of Dr. Carson. If an ALJ disregards a treating physician's opinion, he must set forth "specific, legitimate reasons" for doing so. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984). In Goatcher v. United States Dep't of Health & Human Services, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 290; 20 C.F.R. § 404.1527(d)(2)-(6).

In his decision the ALJ provided a extraordinarily detailed and thorough review of the medical evidence. He also provided specific legitimate reasons for disregarding the opinions of Plaintiff's treating physician, Dr. Carson (TR. 20-21). The ALJ also correctly observed that Jama Shoemaker, a physician's assistant, was not an acceptable source and her opinions, like Dr. Carter's were inconsistent with her own treatment notes as well as the record as a whole (TR. 19-21). 20 C.F.R. §404.15139(a).

Thus, for the reasons discussed above, it appears that the ALJ properly considered the opinions of Plaintiff's treating physician and properly determined that Plaintiff retained the RFC to perform her PRW.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and should be **AFFIRMED**. The parties are advised of their right to object to these findings and recommendation within twenty (20) days of the date of the filing hereof, in accordance with 28 U.S.C. §636 and Local Court Rule 72.1 (a). The parties are further advised that failure to make timely objection to these findings and recommendation waives their right to appeal from a judgment of the district court based upon these findings and recommendation. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

The foregoing Findings and Recommendation disposes of all issues referred to the undersigned magistrate judge in the above captioned matter.

ENTERED this the 11th day of October, 2005.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE